SWANEY *v.* STATE.

Opinion delivered September 29, 1930.

*J. W. Nance* and *J. V. Walker*, for appellant.

*Hal L. Norwood*, Attorney General, and *Pat Mehaffy*, Assistant, for appellee.

SMITH, J. Appellant was tried under an indictment charging him with the crime of murder in the second degree, and was convicted of involuntary manslaughter and given a sentence of one year in the penitentiary, and this appeal is from that judgment.

Two errors are assigned and argued for the reversal of the judgment: First, that certain testimony was erroneously excluded; and, second, that error was committed in giving an instruction numbered 14.

Appellant, who is a man fifty-seven years old, testified that deceased, who was a boy sixteen years old, was employed at the Phipps Lumber Company plant in Fayetteville, of which he was foreman, and that after reproving the boy for smoking around the plant he later discharged him because he persisted in that practice, and that the boy came to the plant on several occasions to be reinstated, but he declined to re-employ him. Appellant further testified that just as work had suspended at noon on the day of the killing the boy came to the plant where the employees had been at work, and walked up to appellant, and, after catching him by the arm, began to call

him vile names. He ordered the boy away, and the boy answered by striking him, whereupon he slapped the boy, who stumbled from the blow but came up with a rock, which he threw at appellant. As the boy did this he called appellant a vile name and said he would kill him, and appellant again slapped the boy. This blow knocked the boy down and apparently broke his neck and death ensued in about fifteen or twenty minutes. Appellant testified that he "just wanted to give him enough to keep him off of me," and that he had no thought of killing the boy or doing him great bodily harm, and that he actually believed, at the time he slapped the boy the second time, that the boy was going to strike him with a rock, and that to prevent this he slapped him.

The testimony on the part of the State was to the effect that appellant and deceased were walking up an aisle in the lumber shed, when the boy cursed appellant, who struck the boy, who, as one witness testified, "staggered back, or run, or something," when appellant, advancing rapidly, struck the boy a second blow, which rendered him unconscious.

Upon the issues thus joined the court gave an instruction numbered 14, reading as follows: "I charge you that the danger, real or apparent, to the defendant must have been so urgent and pressing as to cause the defendant to honestly believe that the killing of the deceased was necessary in order to save his own life or prevent him from receiving great bodily harm at the hands of Homer Stout, and the defendant, to justify the killing, must have acted under the influence of such fears and not in a spirit of revenge."

The record does not reflect what specific objections were made to this instruction at the trial, but it is now insisted that the instruction assumes that the defendant honestly believed the killing of the deceased was necessary in order to save his own life or to prevent the in fliction of great bodily harm, whereas, appellant testified, and at all times insisted, that he not only did not regard

the killing as necessary, but that he had no intention of killing the boy.

It is not argued that the instruction is not correct as an abstract declaration of the law; in fact, similar instructions have been many times approved by this court. The insistence is that the instruction does not present appellant's defense, and that it is therefore abstract and misleading.

This is an objection which should have been specifically made, but the record does not reflect that this was done. However, it does not appear that the instruction was altogether abstract. Appellant admits that he did intend to strike the blow which killed the boy, although he had no intention of killing him, and that he struck the blow because he believed the boy was about to hit him with a rock. Moreover, appellant was not convicted of murder, but of involuntary manslaughter, which imports a finding, under the instructions defining the offense, that there was no intent to kill, but that the killing was done in the commission of an unlawful act, without malice and without means calculated to produce death. It appears therefore that the instruction was neither erroneous nor prejudicial.

The other assignments of error relating to exclusion of testimony arose as follows: Mrs. Alice Sturdy, called as a witness by appellant, testified, that, at a time—about which she could not be exact—she was at the home of the deceased's mother, and heard a conversation between deceased and his mother, when some trouble which had occurred between appellant and deceased over some tools was discussed, and the witness was then asked what the mother of deceased said to her son. An objection to this testimony was sustained, whereupon appellant offered to prove that deceased's mother "told him that she wanted him to go and whip that damned old grey-headed Sam Swaney (appellant), and she wanted to be present and see it done."

We think no error was committed in excluding this testimony, for the reason that it does not tend to prove any threat against appellant by deceased. There was no offer to show that deceased made any response to the suggestion of his mother, or to show what his reaction to the suggestion was, or that the threat had been communicated to appellant. Moreover, the testimony, if admitted, would have been competent only as bearing upon the question as to who had probably been the aggressor in the difficulty, a matter about which there appears to be no conflict as the undisputed testimony shows the trouble commenced when deceased cursed appellant, and was brought on by his doing so.

There is no error in the record, and the judgment must be affirmed. It is so ordered.